UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 06-61733 |
| | ) | |
| | ) | CHAPTER 13 |
| LINDA L. HALL, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtor. | ) | |
| | ) | MEMORANDUM OF OPINION ON MODIFICATION OF PLAN (NOT INTENDED FOR PUBLICATION) |

Now before the Court is the proposed modification of Debtor's Chapter 13 plan, filed on February 4, 2008. The standing Chapter 13 Trustee filed an objection on February 12, 2008. The Court held a hearing on March 13, 2008 and established a briefing schedule. Debtor filed her brief in support of her modification on April 21, 2008. Trustee filed her brief in support of her objection on May 12, 2008.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and (O). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are straightforward. Debtor was married when she filed for bankruptcy. Combined, her income and that of her husband were above the median. Debtor and her husband separated and then divorced during the case. Alone, Debtor's income is below the median. Debtor therefore proposes to modify her plan in two ways: first, by reducing her monthly payment from $300.00 to $175.00; and second, by reducing the plan's length from 60 months to 36 months.

Trustee objects to this second modification, arguing that the "applicable commitment period" is fixed at the time of filing because "current monthly income" is fixed at the time of filing, and the former proceeds directly from the latter.

# LEGAL ANALYSIS

Modifications to Chapter 13 plans are principally governed by 11 U.S.C. § 1329. For the purposes of this case, the relevant text of that section provides that

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
>
> (2) extend or reduce the time for such payments.

11 U.S.C. § 1329(a)(2).

Trustee argues, however, that the ability to extend or reduce the time for such payments does not extend to the ability to reduce the time for such payments below that of the applicable commitment period established at the outset of the case. Trustee's argument proceeds in two stages. First, "applicable commitment period" is defined in 11 U.S.C. § 1325(b)(4), which provides, in relevant part:

> (4) For purposes of this subsection, the "applicable commitment period"--
>
> (A) subject to subparagraph (B), shall be--
>
> (i) 3 years; or
>
> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
>
> (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>
> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals.

Next, Trustee notes that "current monthly income" ("CMI") is a legal term of art, defined in 11 U.S.C. § 101(10A) as the average monthly income debtor (and her spouse, in a joint case) receives during the six-month period ending on the last day of the calendar month immediately preceding the filing date, if (as was the case here) the debtor files the schedule of current income required by 11 U.S.C. § 521(a)(1)(B)(ii). This is a snapshot frozen in time: since the frame of

2

reference is the six months prior to filing, the CMI calculation does not change even if a debtor's income later does. Trustee argues that since the CMI is captured at a specific moment in time, and the applicable commitment period is expressly defined with reference to the CMI, that the applicable commitment period is therefore captured at a specific moment in time–the commencement of the case–as well.

While plausible, the Court does not believe that the language of the Code compels Trustee's conclusion. Most damningly for Trustee's case, 11 U.S.C. § 1329(b)(1) provides that the requirements of § 1325(a) apply to modifications of plans under § 1329(a), but makes no reference to § 1325(b), which contains the provision restricting confirmation to plans satisfying the applicable commitment length based on CMI. It is true that § 1325(a) references § 1325(b) (providing that courts shall confirm plans that meet the requirements of subsection (a), "[e]xcept as provided in subsection (b)"); however, such indirect incorporation of § 1325(b) into § 1329 through § 1325(a) has been a bridge too far for other bankruptcy courts to accept in this and other contexts. See, e.g., In re Sunahara, 326 B.R. 768 (9th Cir. B.A.P. 2005) ("Section 1329(b) expressly applies certain specific Code sections to plan modifications but does *not* apply § 1325(b). Period.") (emphasis in original); In re Ewers, 366 B.R. 139 (Bankr. D.Nev. 2007); In re Kidd,, 374 B.R. 277 (Bankr. D.Kan. 2007) (Chapter 13 plans containing "cash-out" options allowing debtors to "cash out" before the expiry of the applicable commitment period without meeting the requirements of § 1329 could not be confirmed, but the door remained open for good-faith modifications later under § 1329 because Congress did not apply the provisions relating to the applicable commitment period to modified plans). This Court agrees with its brothers.

The argument against indirect incorporation is further bolstered by the fact that, in § 1329(b)(1) Congress *did* expressly incorporate the requirements of both § 1322(a) and (b) into plan modifications, despite the fact that the § 1322(b) begins with an incorporative reference to § 1322(a); the former is subject to the requirements of the latter. Congress did not incorporate only § 1322(b) into § 1329 and expect that doing so would bring § 1322(a) along for the ride, however; "when Congress wanted to incorporate a particular subsection of Chapter 13 into § 1329, it did so explicitly, directly, and unambiguously." In re Hill, 2008 WL 1902668 (Bankr. S.D. Ohio 2008).

The fact that Congress enumerated four specific Code provisions in § 1322(b)(1) that *do* apply to plan modifications under § 1322(a) demands the conclusion that the absence of other provisions from that list is not an accident. In addition, the fact that Congress included two provisions in that list in which one references the other indicates an intent to be direct and specific regarding which provisions were incorporated into the requirements for modifications of plans–and which provisions were not. "It would be anomalous to think that Congress would expect a portion of § 1325 to apply to § 1329(a)(2) without saying so, or for Congress to narrowly and explicitly list the ways a confirmed plan can be modified, only to provide an exception to that rule in § 1325(b) that is neither explicitly incorporated into § 1329(a) nor obvious." Ewers, 366 B.R. at 142.

3

06-61733-rk    Doc 47    FILED 06/11/08    ENTERED 06/11/08 10:55:10    Page 3 of 4

By incorporating § 1325(a), § 1329(b)(1) still guarantees that, among others, the requirement of good faith (articulated in § 1325(a)(3)) applies to plan modifications just as it does to confirmations. This forecloses, *inter alia*, bad faith attempts to circumvent any requirement of § 1325(b) by proposing a plan that satisfies the requirements of that subsection and then modifying the plan, without good cause, to one that would not have been initially confirmable.

However, there is no specter of bad faith in the instant case. Neither side disputes that there has been a material change in Debtor's circumstances: she is now divorced, and her husband's income is no longer part of her household income. Her CMI may remain a number frozen in time, but that number is both irrelevant to the Code provisions that affect plan modifications under the terms of § 1329(b)(1) and no longer an accurate reflection of Debtor's financial situation. The Court holds that 11 U.S.C. § 1329(a)(2) permits Debtor to reduce the time for her payments unimpeded by the applicable commitment period calculations of § 1325(b)(4).

Trustee's objection will be overruled by a separate order to be entered concurrently with this opinion.



RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

Anne Piero Silagy, Esq
220 Market Ave S Ste 300
Canton, OH 44702

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702

4